# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **LINDA K.,**[1]       ) | |
|         ) | |
|      **Plaintiff,**      ) | |
|         ) | **No. 20 C 02732** |
|      **v.**      ) | |
|         ) | **Magistrate Judge Beth W. Jantz** |
| **KILOLO KIJAKAZI, Acting**      ) | |
| **Commissioner of Social Security,**[2]      ) | |
|         ) | |
|      **Defendant.**      ) | |
|         ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Linda K.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 22, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 27, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I.      Procedural History

On December 26, 2016, Plaintiff filed a claim for DIB and SSI, alleging disability since August 12, 2015, due to lumbar degenerative disc disease, herniated disc lumbar spine, fibromyalgia, migraine headaches, irritable bowel syndrome, urological disorder, depression, and anxiety. [R. 117.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 22, 2018. [R. 66.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 66.] Vocational expert ("VE") Gary Wilhelm also testified at the hearing. [R. 66, 108.] On March 8, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 60.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. §405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

### II.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 50-51.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful during the period from her alleged onset date of August 12, 2015 through the date last insured of December 31, 2017. [R. 51.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, irritable bowel syndrome, incomplete uterovaginal prolapse, headaches, and depression. [R. 52.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 52-54.] Before step

2

four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff could do occasional overhead reaching bilaterally, should do no climbing of ladders, ropes or scaffolds, and can do occasional ramps and stairs and remaining postural activities. [R. 54-58.] The ALJ further noted that Plaintiff cannot work around unprotected heights, and can tolerate only occasional exposure to moving mechanical parts, operating motor vehicles, and moderate noise. [R. 54-58.] Finally, the ALJ noted that Plaintiff could perform simple, routine, and repetitive tasks, make simple work-related decisions, and occasionally respond to coworkers and supervisors, but that Plaintiff could not interact with the public. [R. 54-58.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work as a daycare director and daycare worker. [R. 58.] At step five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 60.]

## DISCUSSION

### I.      Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant

retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ

"must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff makes three arguments challenging the ALJ's decision, including: (1) the ALJ did not identify an evidentiary basis for the physical RFC assessment; (2) the ALJ did not identify an evidentiary basis for the mental RFC assessment; and (3) the ALJ incorrectly analyzed Plaintiff's alleged symptoms and limitations. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in evaluating Plaintiff's complaints of headaches and in accounting for Plaintiff's headaches in the RFC, and further erred in crafting and explaining the mental RFC. Because these failures alone warrant remand, the Court need not reach Plaintiff's additional arguments.

### A. The ALJ Erred in Evaluating Plaintiff's Complaints of Headaches and in Accounting for Plaintiff's Headaches in the RFC

Plaintiff testified that she had at least five incapacitating headaches per month during the relevant period. [R. 94-95.] The ALJ did not make a specific finding with respect to the frequency or severity of Plaintiff's headaches, although the ALJ appeared to believe that Plaintiff's headaches were less severe and/or less frequent than Plaintiff indicated. The ALJ erred in two distinct ways: by improperly evaluating the severity and frequency of Plaintiff's headaches, as testified to by the Plaintiff, and by failing to adequately account for Plaintiff's headaches in the RFC despite finding that Plaintiff's headaches constituted a severe impairment.

First, the ALJ erred by improperly evaluating the severity and frequency of Plaintiff's headaches. Indeed, most of the reasons the ALJ gave for disbelieving Plaintiff's testimony with respect to her headaches were either unexplained or incorrect. The ALJ first noted that Plaintiff's

"neurologists seem to have treated her headaches as a part of her fibromyalgia and proscribed [sic] gabapentin, psychotherapy and physical therapy rather than headache prophylaxis." [R. 56, 58.] It is not clear what this conclusion by the ALJ is based on. The ALJ cites to two neurology records in support of that proposition, but neither supports the ALJ's conclusions that Plaintiff's neurologists treated Plaintiff's headaches as part of Plaintiff's fibromyalgia and declined to prescribe headache prophylaxis. In the first record, Plaintiff's neurologist listed headaches separately from fibromyalgia in noting Plaintiff's history of present illness, noted that Plaintiff had headaches two times per week for a duration of two to twelve hours, and noted gabapentin among Plaintiff's medications. [R. 652.] The second record noted that Plaintiff was prescribed amitriptyline for headaches. [R. 1154.] In addition to these records, the ALJ recognized at other points that Plaintiff was prescribed Neurontin for her headaches. [R. 55-56.] Indeed, the records cited by the ALJ reflect treatment by neurologists *specifically directed at* Plaintiff's migraine headaches, including prescription of headache prophylaxis (Neurontin, as the ALJ noted). [R. 55-56; 570; 1275-76.] The record thus does not support the ALJ's conclusion that Plaintiff's neurologists "seem to have treated her headaches as a part of her fibromyalgia" and that they did not prescribe "headache prophylaxis." [R. 58.] Indeed, the ALJ did not even attempt to explain why she did not believe that gabapentin, Neurontin, and/or amitryptline constituted "headache prophylaxis."

The ALJ also noted that Plaintiff reported "fewer headaches over time," [R. 58], but the ALJ did not include any specific conclusion about the frequency or severity of Plaintiff's headaches over time, nor did the ALJ identify the records on which she based her conclusion that Plaintiff's headaches became less frequent over time. In December 2017, near the date last insured, Plaintiff reported to her neurologist headaches of 30 minutes to two hours in length, two to three

times per week. [R. 991.] Although, as the ALJ noted and the Commissioner presses on appeal, Plaintiff denied headaches at certain appointments, "the fact that [Plaintiff] did not have a headache at the time of" specific doctor's visits "is no reason to conclude anything about the frequency or severity of her migraines," especially in light of "the undisputed record of years of treatment for migraines." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014). In short, the ALJ did not "identify the relevant evidence and build a 'logical bridge' between the evidence" and her ultimate determination regarding Plaintiff's alleged headaches. *Id*. The ALJ may not have been required to fully credit Plaintiff's testimony regarding her headaches, but the ALJ was required to provide reasons supported by the record for rejecting Plaintiff's testimony. The ALJ's cursory discussion failed to provide reasons supported by the record for discounting the alleged limiting effects of Plaintiff's headaches.

Second, to the extent the ALJ properly accounted for Plaintiff's headaches, the ALJ still erred by employing RFC restrictions untethered to Plaintiff's condition. At step two, the ALJ found that Plaintiff's headaches constituted a severe impairment, which required the ALJ to account for them in the RFC. *See Martinez v. Colvin,* No. 14 C 2292, 2015 WL 4065032, at *7 (N.D. Ill. July 2, 2015). ("Having found that plaintiff's headaches are a severe impairment, the ALJ was required to account for them in his RFC."). The ALJ lumped Plaintiff's headaches in with Plaintiff's depression, and accounted for both by limiting Plaintiff to "simple, routine, and repetitive tasks, making simple work related decisions, and only occasionally responding to coworkers and supervisors, and no interaction with the public." [R. 58.] But the ALJ made no effort to explain why—nor did the ALJ cite any records or opinions indicating that—limiting the complexity of Plaintiff's work or her interactions with others would account for Plaintiff's headaches. Nor is it apparent from the record why that would be the case. "Where an ALJ finds

that a claimant suffers headaches and those headaches constitute a medically determinable severe impairment, an ALJ must explain how [he] considers the severity and frequency of those headaches and how the fluctuating nature of headaches impacts a claimant's ability to work." *See Charlene J. v. Saul*, No. 17 C 2832, 2020 WL 2404874, at *2 (N.D. Ill. May 12, 2020). The ALJ's failure to do so—and use of unexplained restrictions that seemingly have little connection to Plaintiff's headaches—warrants remand.[3]

**B.      The ALJ Erred in Crafting the Mental RFC**

The ALJ also erred in crafting Plaintiff's mental RFC.  At step three, the ALJ found that Plaintiff had moderate deficits in interacting with others and concentrating, persisting, or maintaining pace.  [R. 53.]  As noted above, to account for Plaintiff's depression (and headaches), the ALJ restricted Plaintiff to "simple, routine, and repetitive tasks, making simple work related decisions, and only occasionally responding to coworkers and supervisors, and no interaction with the public."  [R. 58.]  The ALJ, however, failed to adequately explain and support the mental RFC, with respect to both Plaintiff's concentration, persistence, and pace and social interaction limitations.

With respect to concentration, persistence, and pace ("CPP"), the Court notes that the RFC's restriction to "simple, routine, and repetitive tasks" has been roundly criticized by the Seventh Circuit as generally inadequate to account for moderate CPP limitations.  *See, e.g.,*

---

[3] On appeal, the Commissioner does not address Plaintiff's argument that the ALJ erred by employing unexplained, seemingly misdirected restrictions to account for Plaintiff's headaches; instead, the Commissioner argues that the ALJ was warranted (or would have been warranted) in not accounting for Plaintiff's headaches at all.  The Commissioner does not address what the ALJ actually did—which is find that Plaintiff's headaches constituted a severe impairment at step two, and then provide purportedly corresponding restrictions without any support in the record.  *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

*DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("An ALJ need not use specific terminology, but we have repeatedly rejected the notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.") (cleaned up). Observing that an individual can perform simpler tasks "says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Nor is this a case where the ALJ identified a reason supported by the medical record why such a restriction accounts for Plaintiff's specific CPP limitations. *Cf. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (limitation to routine tasks and limited interactions with others was appropriate where claimant's "impairments surface only when he is with other people or in a crowd"). Indeed, the ALJ did not identify or explain any reason why Plaintiff's CPP limitations would be accommodated by the restrictions included in the mental RFC.

The Commissioner defends the ALJ's decision as justified by the opinions of two state psychological consultants, who noted in their narrative assessments that Plaintiff "retains the functional capacity to engage in simple and routine vocational activities of a 2-3 step requirement." [R. 128, 145.] There are a host of problems with the Commissioner's argument, however.

First, to the extent the ALJ relied on the consultants' narrative conclusions, an ALJ's rote reliance on the bottom-line conclusions of agency consultants in their narrative assessments—to the exclusion of limitations identified elsewhere in their assessment—is improper. *DeCamp*, 916 F.3d at 676 ("But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."). Here, the agency

consultants noted in the checkbox sections of their evaluations that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 126, 143.] "[T]he mere fact that the state psychological consultants indicated Plaintiff was capable of performing simple tasks does not, on its own, excuse the ALJ from accounting for Plaintiff's moderate limitation in concentration, persistence, and pace." *Harry P. v. Kijakazi*, No. 19 CV 03107, 2022 WL 1541416, at *7 (N.D. Ill. May 16, 2022). Indeed, "courts in this Circuit have routinely rejected similar attempts by the Commissioner to save a deficient ALJ opinion by point[ing] to reviewing consultants' bottom-line conclusions." *Id.* (collecting cases); *cf. Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019) (ALJ was permitted to rely on physician's narrative opinion because "there was no such checkbox indicating a moderate limitation"). "Instead, the question to be answered in every case is whether the ALJ has adequately explained, with support from the medical record, how a restriction to unskilled work addresses the claimant's specific concentration, persistence, or pace limitations." *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022). The ALJ's opinion contains no such explanation in this case.

Second, the ALJ in this case did not assign controlling or even great weight to the medical opinions on which the Commissioner says the ALJ relied; the ALJ assigned "some weight" to those opinions, [R. 57-58], but in crafting the RFC did not even specifically cite the opinions to which the Commissioner now points. *See, e.g.*, *Benjamin G. v. Kijakazi*, No. 19 CV 04558, 2022 WL 2208865, at *6 (N.D. Ill. June 21, 2022) (consultants' opinions could not save RFC where they were assigned "little weight").

10

Third, even if the ALJ had clearly relied on these medical opinions in crafting her opinions, in this case it is also unclear that the medical consultants' narrative sections "translated" the moderate limitations identified in the checkbox portion of their opinions into an RFC determination. *See Burmester*, 920 F.3d at 511 (ALJ may reasonably rely on the opinion of a medical expert who "translates" finding of moderate CPP restrictions "into an RFC determination"). The consultants concluded that Plaintiff "retains the functional capacity to engage in simple and routine vocational activities of a 2-3 step requirement," but they said nothing about the pace at which Plaintiff could perform those tasks, or whether Plaintiff could persist in doing so over a long period of time. And, to the extent the consultants attempted to "translate" their findings of moderate limitations into an RFC, their opinions in the narrative section do not appear to reflect the limitations identified in the checkbox portion of their opinions. The checkbox portions of the consultants' opinions note that Plaintiff has moderate limitations with respect to maintaining attention and concentration for extended periods, and in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. [R. 126, 143.] But the checkbox portions also note that Plaintiff is "not significantly limited" in her "ability to carry out detailed instructions." [R. 126, 143.] And yet, the only limitations included in the consultants' narrative section pertain to Plaintiff's ability to carry out detailed instructions. True, a finding of moderate CPP limitations is not inherently inconsistent with a narrative conclusion that an individual is capable of performing simple, routine work, *see Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), but in this case, the consultants' narrative conclusions do not appear to cohere with or account for the specific set of moderate CPP limitations identified in the consultants' checkbox evaluations.

11

Fourth, and perhaps most fundamentally, to whatever extent the ALJ relied on the consultants' opinions in crafting the mental RFC, the ALJ's evaluation of the consultants' opinions is not supported by substantial evidence. The entirety of the ALJ's discussion of the consultants' opinion was: "The State agency psychological consultants, R. Leon Jackson, PhD., and Lionel Hudspeth, PsyD, opined that the claimant could perform simple and routine vocational activities of a 2 to 3 step requirement. These opinions are given some weight, because although they are consistent with the evidence available at the time these opinions were offered, more recent evidence received at the hearing level indicated she is even more limited in her ability to socialize than this opinion described." [R. 57-58.] The only reason the ALJ gave for relying on any portion of the consultants' opinions is that "they are consistent with the evidence available at the time these opinions were offered." But that is not a reason; it is instead "entirely unhelpful" boilerplate that "provides no indication of which portions of the record might actually be consistent" with the consultant's opinions. *Schmidt v. Colvin*, 545 F. App'x 552, 557 (7th Cir. 2013). Because the ALJ did not provide a meaningful and supported reason why she afforded even some weight to the consultants' opinions, they cannot support her RFC determination with respect to Plaintiff's CPP limitations.

Finally, the ALJ erred in assessing Plaintiff's social limitations. Plaintiff argues that the ALJ did not explain why she concluded that Plaintiff could occasionally interact with supervisors and coworkers, but not the general public (as opposed to including more serious limitations). And, indeed, the ALJ provided no explanation for the specific limitations included in her mental RFC.[4] The Commissioner again defends the ALJ's decision as supported by the opinions of the two

---

[44] The ALJ provided reasons why Plaintiff was not as socially limited as Plaintiff indicated, [R. 53], but made no connection between the evidence she credited and her RFC.

12

agency consultants. But the ALJ specifically rejected the agency consultants' opinions with respect to Plaintiff's ability to interact with others, noting that "more recent evidence received at the hearing level indicated she is even more limited in her ability to socialize than" the consultants' opinions described. [R. 57-58.] Ultimately, the ALJ identified no medical opinions in support of the social component of the mental RFC.

Nor is the ALJ's opinion saved by the fact that the ALJ's RFC was more restrictive than the RFC identified in the narrative section of the consultants' opinions. This is because the ALJ did not ground her conclusion on any medical opinions or otherwise explain how she evaluated the evidence related to Plaintiff's social functioning that arose after the consultants' review. In this way, the instant case is much like *Keno B. v. Kijakazi*, No. 19 C 1593, 2021 WL 3290809 (N.D. Ill. Aug. 2, 2021), in which an ALJ "found 'a greater degree of exertional, postural, and environmental limitations' based on Claimant's testimony and potentially other evidence in the record that the ALJ had reviewed but that was not reviewed by the state agency doctors." *Id*. at *3. In *Keno B.*, the court remanded because the ALJ "did not offer any explanation how or why the opinions of the state agency doctors were inconsistent with the subsequent medical records they did not review but that the ALJ had available to h[er]." *Id*. So too here—the ALJ rejected the consultants' opinions with respect to Plaintiff's social functioning due to unidentified evidence that post-dated the consultants' review. Indeed, there was "something in the record or testimony from [Plaintiff herself] that [the ALJ] felt required or justified greater functional limitations," and "the Court wonders how the state agency doctors or a medical expert would have evaluated that evidence or testimony." *Id*. ALJs are "required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Here, the ALJ seemingly identified specific social restrictions on her own without

support from any medical opinion, based on evidence that the ALJ did not specify or explain and that that the agency consultants never reviewed.  This too was error.

Because the foregoing errors require remand, the Court need not evaluate the remaining issues identified by the Plaintiff.  On remand, however, the Administration should not construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [22] is granted, and the Commissioner's motion for summary judgment [27] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 7/6/2022

_____

BETH W. JANTZ
United States Magistrate Judge

14